**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 18-cv-61418-BLOOM/Valle**

EXAVIA FRAZIER, in his individual capacity, and as Personal Representative of the Estate of FRAZIER FRAZIER, deceased,

Plaintiff,

v.

SHERIFF SCOTT ISRAEL, Sheriff of Broward County, Florida, in his official capacity; and, ZACHARY HASSON, Deputy Sheriff, in his individual capacity; and ANDRE LANDELLS, Deputy Sheriff, in his individual capacity,

Defendants.

_________________________________________/

# ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Sheriff Scott Israel's ("Defendant" or "Sheriff") Motion to Dismiss Plaintiff's Complaint, ECF No. [9] (the "Motion"), which seeks dismissal of the counts asserted against him in his official capacity in Plaintiff Exavia Frazier's ("Plaintiff" or "Frazier") Complaint, ECF No. [1], for failure to state a claim. The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

## I. BACKGROUND

This case arises from a tragic series of events that occurred on September 9, 2016. The decedent, Frazier Frazier, a fifty-five year old African-American man, had been drinking in his home and was agitated, when a family member called 9-1-1 for police assistance. ECF No. [1],

¶ 13. According to the Complaint, the police were informed that Frazier likely had a pocket knife. *Id*. ¶ 14. At the time the Sheriff's deputies, Hasson and Landells, arrived, Frazier had calmed down and was sitting alone in the backyard in a lawn chair eating his dinner. *Id*. ¶ 13. In the Complaint, Plaintiff alleges that despite knowing that Frazier was alone, the deputies entered the dark back yard, using only the lights attached to their handguns to see. *Id.* ¶ 14. When the deputies approached, Frazier was holding a plate of food in his left hand and a fork in his right hand. *Id*. ¶ 15. When they were four to five feet away from Frazier, the deputies opened fire, striking him with a total of six bullets, ultimately killing him. *Id*. ¶¶ 15-16. According to Plaintiff, the deputies never issued clear verbal warnings, nor did they attempt to use non-lethal force against Frazier. *Id*. ¶ 15.

As a result, Plaintiff asserts three counts for relief against the Sheriff, including violations of 42 U.S.C. § 1983 based upon a custom or policy (Count II), negligence (Count III), and battery (Count V).[1] The Sheriff seeks dismissal of the § 1983 and negligence claims for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

## II. LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556

[1] Plaintiff also asserts claims against deputies Hasson and Landells, who have filed answers. *See* ECF Nos. [8], [10].

[2] The Sheriff withdrew his request for dismissal with respect to Plaintiff's battery claim. *See* Reply, ECF No. [18] at 3.

U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). A complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

## III. ANALYSIS

### A. <u>Section 1983 Claim (Count II)</u>

In Count II, Plaintiff claims that the Sheriff established a custom, policy, pattern and practice that led to Frazier's death. The claim is premised on two separate bases. The Plaintiff asserts the existence of a policy, custom or practice of deliberate indifference to individuals'

Fourth and Fourteenth Amendment rights based upon first, the failure to properly train, supervise and discipline officers; and second, the failure to conduct fair and impartial investigations of police misconduct and use of excessive force and racial bias. Defendant argues that Plaintiff's § 1983 claim should be dismissed because Plaintiff fails to allege any facts that would lead to the conclusion that there exist such policies, customs, or practices, and that the policies, customs, or practices led to Frazier's death. For the reasons set forth below, the Court disagrees.

"When, as here, the defendant in a § 1983 civil rights action is the county sheriff, the suit is effectively an action against the governmental entity he represents . . . . ." *Adcock v. Baca*, 157 F. App'x 118, 119 (11th Cir. 2005) (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005)). According to the Supreme Court, § 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 692 (1978). Indeed, "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)).

"[I]n order to be held liable for a § 1983 violation, a municipality must be found to have itself caused the constitutional violation at issue . . . ." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1145 (11th Cir. 2007) (citation omitted); *see also Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." (internal citation omitted) (emphasis in original)). Thus, the constitutional

deprivation must come at the hands of an official policy or "custom." *See Monell*, 426 U.S. at 690 (stating that local governing bodies may be subject to liability under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers"). "[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution . . . ." *Id*.

"A plaintiff . . . has two methods by which to establish a [municipal actor's] policy: identify either (1) an officially promulgated [ ] policy; or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the [municipal actor]." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).[3] "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice[; h]owever, the custom need not receive formal approval." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see also Smith v. Mercer*, 572 F. App'x 676, 679 (11th Cir. 2014) ("A plaintiff must identify a 'consistent and widespread practice' of constitutional deprivations to prove local government liability for an unofficial custom."); *Carter v. Columbus Consol. Gov't*, 559 F. App'x 880, 881 (11th Cir. 2014) ("the challenged practice or custom must be 'so pervasive as to be the functional equivalent of a formal policy'") (quoting *Grech*, 335 F.3d at 1330 n.6); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) ("[T]o prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice . . . .").

Where a municipality's failure to train or supervise its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants, such a shortcoming may

[3] The Court assumes without deciding that the Sheriff is properly considered a "final policymaker."

constitute a "policy or custom" actionable under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). "In addition, . . . a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." *Griffin*, 261 F.3d at 1308 (citing *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)). Therefore, in order to establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009) (quoting *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)) (internal quotations omitted).

In the Complaint, Plaintiff alleges that the Broward County Sheriff's Office ("BCSO") has a long history of using excessive force on citizens, discriminating against African American citizens, and denying due process of law. ECF No. [1] ¶ 22. The Sheriff does not challenge Plaintiff's characterization of its officers' use of force as excessive under the circumstances; rather, he argues that Plaintiff fails to include concrete examples of past incidents. However, in support of the *Monell* claim, Plaintiff sets out eight past incidents involving BCSO deputies that Plaintiff contends demonstrate the BSCO's custom or policy of discrimination, use of excessive force, and failure to properly investigate such incidents. *Id*. ¶¶ 23, 26. In pertinent part, Plaintiff alleges the following:

> In 2009 Deputy Justin Lambert beat and abused another Broward citizen, striking, pummeling and pounding a party host while responding to a noise complaint in Dania Beach. In 2010 Deputy Wengert used excessive force on Kevin Buckler when he fractured his face after he pulled him over for playing his radio too loud. On August 17, 2013, deputies Dimitri French, Eddy Hernandez, and Todd Yoder were accused in a civil lawsuit of using excessive force and viciously beating Bryan Atkinson fracturing his skull,

> part of his face, and causing a brain bleed during the arrest. On February 18, 2014, BCSO deputies Justin Lambert and Mike Manresa responded to a convenience store in Deerfield Beach for a report of a theft by 50-year-old David Gonzalez whom was drunk and mumbling, stole candy and then tried to get beer. Deputies claimed that David Gonzalez became belligerent, raised his hand and lunged at them, and they ended up fracturing his face committing a felony battery. Another Deputy Michael Manresa, falsified records in connection with the same incident. In February 2015, Deputy Wengert used excessive force on Robert Arciola and he stuck him repeatedly in the face. In September 2015 Deputy Wengert and Detective Davis Acevedo used excessive force on Humberto Pellegrino and Pedro Claveria allowing dogs to maul them after they surrendered. Deputy Wengert also improperly sicced a dog on a teenager and then lied about the incident in the report, although BCSO itself filed criminal charges against him, after he was acquitted Sheriff Israel maintained his employment.
>
> . . .
>
> In 2013 Broward County Sheriff's deputies shot Jermaine McBean, an African-American IT engineer. Deputies shot Mr. McBean when they received a call saying he was walking around with a gun. The weapon resting on his shoulders was an unloaded air-rifle; two years after the shooting photographs revealed that Mr. McBean was wearing headphones when he was shot, explaining why he did not respond to verbal commands. At the time of the incident the deputies reported the headphones had been found in the victim's pockets which led to allegations that deputies attempted to cover up the shooting; to wit, the deputies that shot Mr. McBean were not subject to discipline nor terminated thereby ratifying the use of excessive force against African American citizens and the failure to conduct fair and impartial investigations into officer-related shootings.

ECF No. [1] ¶¶ 23, 26. Plaintiff further alleges that deputies Hasson and Landells are still BCSO employees and were never disciplined for killing Frazier. *Id*. ¶ 50. At this stage, these allegations are accepted as true and construed in a light most favorable to the plaintiff. *Pielage v.* McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008). Therefore, Plaintiff has alleged sufficient facts to state a plausible claim based on a policy or custom on the part of the Sheriff.

**B. <u>Negligence Claim (Count III)</u>**

In Count III, Plaintiff asserts a negligence claim against the Sheriff, premised upon numerous theories, including failure to properly hire, train, retrain, supervise, discipline, reprimand, intervene, take corrective action, and promulgate proper policies and procedures on the use of excessive force and eliminating racial bias in policing. Defendant argues that this claim should be dismissed because a cause of action for negligence against an employer for acts of an employee based on negligent hiring, supervision, or retention lies only for torts committed outside the scope of employment.

At the outset, the Court notes that the various duties alleged by Plaintiff fall within the broader categories of hiring, supervision, retention, and training. "The negligent hiring, retention or supervision of an incompetent, dangerous agent or servant under circumstances which establish that the employer knew or should have known of the agent's or servant's incompetence and dangerousness, and the likelihood or foreseeability that the agent would injur[e] a third person, is long established as a basis for tort liability under Florida law." *Jackson v. Montesino*, No. 08-80554-CIV, 2009 WL 1515511, at *9 (S.D. Fla. June 1, 2009). The main difference between negligent hiring and supervision or retention is a matter of timing. "A claim for negligent hiring arises when, before the time the employee is hired, the employer knew or should have known that the employee was unfit. Liability in these cases focuses on the adequacy of the employer's pre-employment investigation into the employee's background. Liability for negligent supervision or retention, however, occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment." *Malicki v. Doe*, 814 So. 2d 347, 362 n.15 (Fla. 2002) (citing *Garcia v. Duffy*, 492 So. 2d 435,438 (Fla. 2d DCA 1986)) (internal quotations

omitted). However, "the tort of negligent hiring or retention under Florida law allows for recovery against an employer for acts of an employee committed outside the scope and course of employment." *Belizaire v. City of Miami*, 944 F. Supp. 2d 1204, 1214 (S.D. Fla. 2013). Likewise, a claim for negligent supervision must also arise from acts occurring outside the scope of employment. *Watson v. Miami-Dade Cty.*, 126 F. Supp. 3d 1313, 1330 (S.D. Fla. 2015) (internal citation omitted). In the Complaint, Plaintiff unequivocally alleges that deputies Hasson and Landells were acting in the course of their employment, *see* ¶¶ 12, 58; thus, the claims for negligent hiring, supervision, and retention fail as a matter of law. *See id.* at 1215 (granting dismissal "[b]ecause Florida law ties liability under the theory of negligent retention to acts committed outside the scope of employment."). Moreover, the Complaint is entirely devoid of any allegations with respect to Defendants Hasson and Landells' employment history or any past incidents involving them that could fairly be considered to have put the Sheriff on notice of an issue with them. *See Dept. of Envtl. Protection v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005) ("Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge or reassignment.") (internal citation omitted).

The Sheriff argues in addition for the first time in his reply that training involves a discretionary function for which the Sheriff has immunity. *See* ECF No. [18]. While the Court recognizes that it is not proper to raise an argument for the first time in a reply, the Court is duty bound to apply Florida law, and must determine whether governmental liability would attach for such a claim. In support of the claim premised upon negligent training, Plaintiff alleges that the Sheriff failed to train the deputies "in how to respond to situations without creating a zone of

risk, lawful use of force, de-escalation techniques, non-lethal uses of force, non-racially biased policing, or the application of the Equal Protection Clause." ECF No. [1] at ¶ 50. Under Florida law, the state has waived sovereign immunity in tort for the actions of an employee acting within the scope of his or her employment. *See* Fla. Stat. § 768.28(9)(a) (stating in pertinent part, "[t]he exclusive remedy for injury or damage suffered as a result of act . . . of an . . . employee . . . shall be by action against the governmental entity . . . , unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."). However, "a governmental agency is immune from tort liability based upon actions that involve its discretionary functions." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001) (citing *Dep't of Health & Rehabilitative Servs. v. Yamuni*, 529 So. 2d 258, 260 (Fla. 1988) (internal quotations omitted). And, "[a] city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." *Id.* Because Plaintiff's claim is premised upon the content of training by the Sheriff, the discretionary function exception to the waiver of sovereign immunity applies, and Plaintiff's claim is barred.

## IV. CONCLUSION

For the reasons set forth, Defendant's Motion, **ECF No. [9]**, is **GRANTED IN PART AND DENIED IN PART**. Count III is dismissed with prejudice, and the Motion is denied as to Count II, and denied as moot with respect to Count V. Defendant shall file an answer to Counts II and V **on or before October 2, 2018**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of September, 2018.

_______________________________
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record